UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

JOSÉ ANTONIO ESPINOSA CRUZ,

                Plaintiff,                                    Case No. 22-cv-10671

                                                      Hon._____

v.

ROSS CONSTRUCTION SERVICES
L.L.C.; TODD ALLAN ROSS; and JOHN
DOES, Individually 1 through 10,

                Defendants.

---

HOLLAND LOCKLEAR (P82236)
**Law Offices of Holland Locklear, PLLC**
Counsel for Plaintiff
607 Shelby Street, Suite 725
Detroit, Michigan 48226
(833) 424-4466/ Fax: (833) 424-4466
holland@locklearlegal.com

---

## <u>COMPLAINT AND JURY DEMAND</u>

        There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge, nor do I know of any other civil action, not between these parties, arising out of the same transaction or occurrence as alleged in this Complaint that is either pending or was previously filed and dismissed, transferred or otherwise disposed of after having been assigned to a Judge in this Court.

NOW COMES Plaintiff, José Antonio Espinosa Cruz, by and through his attorney, Law Offices of Holland Locklear, and for his Complaint against the above-named Defendants, states as follows:

## NATURE OF PLAINTIFF'S CLAIMS

1.      This lawsuit arises under The Fair Labor Standards Act, 29 U.S.C §201 *et. seq.* ("FLSA") and the Michigan Minimum Wage Law of 1964, MCL 408.381 *et. seq.* ("MMWL") for Defendants' failure to pay Plaintiff overtime wages, the Elliott-Larsen Civil Rights Act, MCL 37.2101, *et seq.* ("ELCRA") for Defendants' discrimination against Plaintiff based on his race and national origin by creating and maintaining a hostile work environment, subjecting Plaintiff to disparate treatment and retaliation, and tort actions of intentional infliction of emotional distress, negligence and vicarious liability. Defendants' unlawful compensation practices have denied Plaintiff his earned wages and Defendants' unlawful racial discrimination against Plaintiff has directly and proximately caused Plaintiff a multitude of injuries and damages.

## JURISDICTION AND VENUE

2.      This court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C § 1331 and 29 U.S.C § 216(b).

3.      This court also has supplemental jurisdiction over state law claims pursuant to 28 U.S.C §1367. The pendant state claims are part of the same case or controversy and do not predominate or raise novel or complex issues

4.      Venue is proper pursuant to 28 U.S.C §1391, since all Defendants reside in or are located within this District and the events giving rise to this action occurred in this District.

## PARTIES

5.      Plaintiff, José Antonio Espinosa Cruz, is a thirty-eight-year-old Mexican National male with permanent residency in the United States who resides in Washtenaw County. Plaintiff is a professional tradesman in general construction and has spent the last five years working full-time in the construction industry. Plaintiff was employed as a general construction laborer by Defendants from approximately January 2021 to December 10, 2021.

6.      Defendant Ross Construction Services L.L.C. ("Defendant Ross Construction") is a Michigan limited liability company located at 110 Burtch Road, Grass Lake, Michigan, in the County of Jackson, with Defendant Todd Allan Ross ("Defendant Ross") as its resident agent. Defendant Ross Construction is owned solely by Defendant Ross. At all relevant times, Defendants Ross and Ross Construction employed Plaintiff in the County of Jackson.

7.      Defendant Todd Ross ("Defendant Ross") is a Caucasian male and resident of Jackson County, Michigan. He is the sole owner of Defendant Ross Construction and routinely interacts with and supervises Ross Construction's employees, and has general supervisoral authority over them, including the power to hire and fire.

8.      Defendant John Does 1 through 10 are employees of Defendants Ross and Ross Construction, whose full identities and residencies are not presently known to Plaintiff, but will be revealed through discovery. Defendant John Does include two individuals who are in supervisory roles over Plaintiff and eight individuals who are in equal employment roles as Plaintiff. Defendant John Does 1 through 10 are all Caucasian males.

9.      Upon information and belief, the two supervisory Defendant John Does are named "Benjamin" and "Dave." The full identity and residency of these individuals will be revealed through discovery.

10.     Upon information and belief, the eight Defendant John Does who are in the same employment roles as Plaintiff include individuals named "Aaron," "Joe," "Tony," "Austin," "Justin," and "Kenneth." The full identity and residencies of these Defendant John Does and of the remaining Defendant John Does will be revealed through discovery.

## FACTS

11.     Plaintiff incorporates the preceding paragraphs by reference as if fully restated here.

12.     Plaintiff has worked professionally as a construction worker for over five years. He has achieved professional level skills in various forms of construction, including, but not limited to, rough carpentry, framing, roofing, epoxy flooring and masonry.

13.     Because of his experience, Plaintiff was quickly hired for a full-time crew position with Defendant Ross Construction after applying for a job-posting on Craigslist in January 2021.

14.     In that role, Plaintiff was responsible working as part of a construction crew consisting of himself, Defendant Ross and Defendant John Does 1 through 10.

15.     Throughout the course of his employment, Defendants Ross and Ross Construction unlawfully denied Plaintiff overtime as required by federal and state law.

16.     From January 2021 through the present, the Fair Labor Standards Act and the Michigan Workforce Opportunity Wage Act, required that Defendants Ross and Ross Construction compensate Plaintiff not less than one and one-half times Plaintiff's regular rate of pay for all hours worked in excess of forty (40) hours during a single workweek.

17.     When the Plaintiff began working for Defendants Ross and Ross Construction in January 2021, his wage rate was $20.00 per hour.

18.     Due to his exceptional work performance, Plaintiff received a wage increase to $23.00 per hour in approximately May 2021, which remained his wage during the remainder of his employment with Defendants Ross and Ross Construction.

19.     Throughout the time he worked for Defendants Ross and Ross Construction, Plaintiff routinely worked more than forty (40) hours in a workweek.

20.     During his employment with Defendants Ross and Ross Construction, Plaintiff requested that he be paid overtime pay for hours worked that exceeded forty (40) hours in a week.

21.     Despite his requests, Defendants Ross and Ross Construction refused to pay Plaintiff overtime wages for all work in excess of forty (40) hours per week.

22.     Throughout the time of Plaintiff's employment, Defendants Ross and Ross Construction maintained a policy of not paying overtime wages for all work in excess of forty (40) hours.

23.     Defendants Ross and Ross Construction failed to pay Plaintiff compensation of not less than one and one-half times his regular rate of pay for all hours worked in excess of forty (40) hours during a single workweek.

24.     Further, Defendants Ross and Ross Construction deducted wages from Plaintiff for health insurance benefits, despite never providing Plaintiff with health insurance coverage or information on health insurance benefits.

25.     In addition to unlawfully denying Plaintiff his earned wages, Defendants subjected Plaintiff to unconscionable discrimination against him due to his race and national origin.

26.     Defendants' unlawful discrimination and haassment against Plaintiff based on his race and national origin resulted in Plaintiff suffering disparate treatment, severe and pervasive hostile work environment created as a condition of employment and retaliation.

27.     At all relevant times, Plaintiff was the only Hispanic employee and only Mexican national employed by Defendant Ross Construction. All other employees of Defendant Ross Construction were Caucasian (or "white") males, besides a Caucasian female employed in a secretarial role.

28.     Plaintiff exhibited exceptional work without work performance issues through the course of his employment.

29.     However, beginning the first day of his employment, Plaintiff began suffering racial abuse and discrimination at the hands of Defendant Ross and Defendant John Does 1 through 10 .

30.     Defendants Ross and Defendant John Does 1 through 10 engaged in concerted severe and pervasive abuse of Plaintiff based on Plaintiff's race and national origin.

31.     Beginning in January 2021, Defendant Todd and Defendant John Does (including instigations by a John Doe known to Plaintiff as "Aaron"), began racially attacking Plaintiff, by mocking and mimicking his accent.

32.     At that time, Plaintiff, Defendants Ross and Defendant John Does were working on a job site near a body of water. Through the course of the job, Defendants Ross and Defendant John Does racially harassed Plaintiff with multiple statements, including:

   a.   "José, do you want to swim in the river?"

   b.   "José, do you remember swimming to cross the border?"

33.     Plaintiff immediately and continuously protested the racial harassment from Defendants, with increasingly insistent protests over time.

34.     Rather than ceasing their unlawful racial discrimination of Plaintiff, Defendant Ross and his employees intensified the same racial discrimination against Plaintiff as punishment for his protests.

6

35.     During Plaintiff's employment with Defendant Ross Construction, Defendant Ross and Defendant John Does 1 through 10 used racial epithets and verbal attacks directed to, and about, Plaintiff, including, but not limited to:

a.  "Stupid Monkey" (commonly repeated by Defendant Ross);

b.  "Speedy Gonzalez" (commonly repeated by Defendants Ross and Defendant John Doe, who Plaintiff knows by "Joe");

c.  "Fucking Mexican";

d.  "You're going to get deported soon";

e.  "Why don't you go back home";

f.  "Nigger";

g.  "You're lucky you're not Black";

h.  "Mexicans are better than Black people";

i.  "You should be grateful we hired you" (used in context of Plaintiff's accented English speaking);

36.     Further, Plaintiff was consistently assigned the least desirable, most dangerous and most strenuous work duties compared to his similarly situated white co-workers.

37.     When Plaintiff complained of, and inquired into the reasoning for, his less desirable work assignments, he was told by Defendant Ross directly and by Defendant John Does that Plaintiff was given these assignments because the assignments were "nigger jobs."

38.     Despite there being no difference in Plaintiff's work product and the work product of his similarly situated white co-workers, Defendant John Does (including the individual known to Plaintiff as "Aaron"), told Plaintiff that Plaintiff worked "the Mexican way," and that the rest of the crew worked "the American way."

39.     Further, Defendants Ross and Ross Construction paid Plaintiff at a lower rate than his similarly situated white co-workers.

40.     In approximately May 2021, Plaintiff learned by overhearing discussions between Defendant John Does that Defendant John Does 1 through 10 were each meeting with Defendant Ross to discuss pay increases.

41.     Plaintiff further learned at this time that he was being paid at a lower rate than his similarly situated white co-workers, despite his equal or superior work performance.

42.     After demanding a meeting with Defendant Ross, Plaintiff was given a separate meeting to discuss wages with Defendant Ross, after which he received a pay raise due to his exceptional work performance.

43.     After this meeting and initial pay raise, Plaintiff learned that each of his similarly situated white co-workers, John Does 1 through 10, received an additional pay raise from Defendants Ross and Ross Construction.

44.     Plaintiff requested an additional meeting with Defendant Ross to discuss the wage disparities between himself and his coworkers, and whether Plaintiff would be receiving the same additional pay raise, but Plaintiff's request was denied.

45.     Due to his economic circumstances, Plaintiff continued his employment with Defendant Ross and Ross Construction until December 10, 2021, when he was terminated by Defendant Ross.

46.     On December 10, 2021, Plaintiff, Defendant Ross and Defendant John Does were working on constructing an addition to Defendant Ross's mother's home, in Ypsilanti Township, which included installing framing and a roof.

47.     In a haste to quickly and cheaply complete the framing, Defendant Ross ordered Plaintiff to operate a nail gun while hanging from a rafter suspended 18 feet off the ground without proper safety equipment, while Defendant Ross used a forklift to lift wooden beams for Plaintiff to nail to the frame and roof.

48.     While Plaintiff was hanging from the rafter, Defendant Ross continued to berate Plaintiff with racial epithets, including statements that Plaintiff was performing "a nigger job."

49.     Shortly before the crew broke for lunch, Plaintiff approached Defendant Ross to protest the abuse he was enduring that day.

50.     In response to Plaintiff's approach, Defendant Ross physically pushed Plaintiff and told Plaintiff, including, but not limited to:

a.   "I will teach you, motherfucker";

b.   "You wanted a job to improve your English – embarrassing";

c.   "I don't like your character. You speak too quietly and now you want to be loud";

51.     The next day, Plaintiff learned he was terminated when he did not receive his usual and expected call from Defendant Ross providing him with the location to report for work that morning.

52.     As a result of Defendants' actions, Plaintiff has suffered, and will continue to suffer, including but not limited to the following:

a.   Extreme stress;

b.   Emotional distress;

c.   Time off work;

d.   Humiliation;

e.   Non-economic damages;

    f.   Economic damages;

    g.   All other injuries to be discovered throughout discovery.

**COUNT I**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
*Overtime – As to Defendants Ross and Ross Construction*

53.      Plaintiff incorporates the preceding paragraphs by reference as if fully restated here.

54.      At all relevant times, Plaintiff was Defendants Ross and Ross Construction's employee within the meaning of the Fair Labor Standards Act, 29 U.S.C §201 *et. seq.* ("FLSA").

55.      At all relevant times, Defendants Ross and Ross Construction were Plaintiff's employers within the meaning of the FLSA.

56.      In violation of the FLSA, Defendants Ross and Ross Construction failed to pay Plaintiff at the federal overtime rate of one and one-half times his normal rate of pay when working more than forty (40) hours during a week.

57.      Defendants Ross and Ross Construction engaged in a pattern or practice of failing and/or refusing to compensate Plaintiff at the federal overtime rate of one and one-half times his normal rate of pay when working more than forty (40) hours during a week.

58.      Defendants Ross and Ross Construction knowingly, intentionally, and willfully failed to pay at the federal overtime rate of one and one-half times his normal rate of pay when working more than forty (40) hours during a week.

59.      As a result of Defendants Ross and Ross Construction's conduct, Plaintiff is entitled to an award of damages including but not limited to compensatory damages, liquidated damages, punitive damages, costs, attorneys' fees, prejudgment interest and other damages as allowed by law and equity.

**COUNT II**
**VIOLATION OF THE MICHIGAN WORKFORCE OPPORTUNITY**
**WAGE ACT**
*Overtime – As to Defendants Ross and Ross Construction*

60.     Plaintiff incorporates the preceding paragraphs by reference as if fully stated here.

61.     At all relevant times, Plaintiff was Defendants Ross and Ross Construction's employee within the meaning of the Michigan Workforce Opportunity Wage Act, Mich. Comp. Laws § 408.411 *et seq.* ("MWOWA")

62.     At all relevant times, Defendants Ross and Ross Construction were Plaintiff's employer within the meaning of the MWOWA.

63.     In violation of the MWOWA, Defendants Ross and Ross Construction failed to pay Plaintiff at Michigan's overtime rate of one and one-half times their normal rate of pay when working more than forty (40) hours during a week.

64.     Defendants Ross and Ross Construction engaged in a pattern or practice of failing and/or refusing to compensate Plaintiff at the state's overtime rate of one and one-half times his normal rate of pay when working more than forty (40) hours during a week.

65.     Defendants Ross and Ross Construction knowingly, intentionally, and willfully failed to pay Plaintiff at the Michigan overtime rate of one and one-half times his normal rate of pay when working more than forty (40) hours during a week.

66.     As a result of Defendants Ross and Ross Construction's conduct, Plaintiff is entitled to an award of damages including but not limited to compensatory damages, liquidated damages, punitive damages, costs, attorneys' fees, prejudgment interest and other damages as allowed by law and equity.

**COUNT III**
**VIOLATION OF MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT**
*Hostile Work Environment – As to All Defendants*

67.     Plaintiff incorporates the preceding paragraphs by reference as if fully restated here.

68.     At all relevant times, Plaintiff was Defendants Ross and Ross Construction's employee within the meaning of Michigan's Elliott-Larsen Civil Rights Act, MCL 37.2101, *et seq.* ("ELCRA").

69.     At all relevant times, Defendants Ross and Ross Construction were employers within the meaning of the ELCRA.

70.     At all relevant times, under the ELCRA, Plaintiff had a right to employment free from discrimination based on his race and national origin.

71.     Plaintiff was subjected to unwelcome verbal conduct and treatment due to his race and national origin.

72.     Defendants violated Plaintiff's rights under the ELCRA by allowing the unwelcome conduct to affect a term or condition of employment, including unreasonably interfering with Plaintiff's work performance, and thus creating an intimidating and hostile work environment, ultimately leading to Plaintiff's termination.

73.     As a direct and proximate cause of Defendants' unlawful actions, Plaintiff has sustained and continues to sustain injuries and damages.

## COUNT IV
## VIOLATION OF MICHIGAN ELLIOT-LARSEN CIVIL RIGHTS ACT
*Disparate Treatment - As to All Defendants*

74.     Plaintiff incorporates the preceding paragraphs by reference as if fully restated here.

75.     At all relevant times, Plaintiff was Defendants Ross and Ross Construction's employee within the meaning of the ELCRA.

76.     At all relevant times, Defendants Ross and Ross Construction were Plaintiff's employers within the meaning of the ELCRA.

77.     At all relevant times, under the ELCRA, Plaintiff had a right to employment free from discrimination based on his race and national origin.

78.     Defendants, through their agents, representatives, and employees, were predisposed to discrimination on the basis of race and national origin and acted in accordance with that predisposition.

79.     Defendants, through their agents, representatives, and employees, treated Plaintiff differently from similarly situated non-Hispanic and non-Mexican national employees in the terms and conditions of employment, on the unlawful basis of race and national origin.

80.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered, and continues to suffer, injuries and damages.

**COUNT V**
**VIOLATION OF MICHIGAN'S ELLIOT LARSEN CIVIL RIGHTS ACT**
*Retaliation – As to All Defendants*

81.     Plaintiff incorporates the preceding paragraphs by reference as if fully restated here.

82.     At all relevant times, Plaintiff was Defendants Ross and Ross Construction's employee within the meaning of the ELCRA.

83.     At all relevant times, Defendants Ross and Ross Construction were Plaintiff's employers within the meaning of the ELCRA.

84.     At all relevant times, under the ELCRA, Plaintiff had a right to employment free from discrimination based on his race and age.

85.     Plaintiff's act of lodging complaints regarding Defendants' and Defendants' employees' conduct was a protected activity under the ELCRA.

86.     Defendants retaliated against Plaintiff by instituting baseless disciplinary proceedings, failing to investigate Plaintiff's numerous complaints, and issuing poor performance

evaluations despite Plaintiff's excellent work performance, ultimately resulting in Plaintiff's termination.

87.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer damages and injuries, as herein alleged.

**COUNT VI**
**INTENTIONAL INFLICATION OF EMOTIONAL DISTRESS**
*As to All Defendants*

88.     Plaintiff incorporates the preceding paragraphs by reference as if fully restated here.

89.     Defendants' conduct was extreme and outrageous in that it exceeded all possible bounds of decency and would be regarded as intolerable in a civilized society.

90.     Defendants knew that Plaintiff was vulnerable due to the authority Defendants held over Plaintiff as his employers, and that their conduct would likely result in harm due to emotional and mental distress.

91.     Defendants failed to protect Plaintiff from suffering this egregious and outrageous conduct of its agents, representatives, and employees.

92.     Defendants failed to properly investigate Plaintiff's allegations. Upon information and belief, Defendants conducted no real investigation whatsoever.

93.     Defendants intended to cause Plaintiff emotional distress, and/or Defendants acted with reckless disregard of the probability that Plaintiff would suffer emotional distress.

94.     As a result of Defendants' conduct, Plaintiff suffered severe emotional distress that was substantial, and that no reasonable person in a civilized society should be expected to bear, including but not limited to suffering anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame.

95.     The conduct of Defendants was a substantial factor, in fact the only factor, in causing Plaintiff's severe emotional distress.

**COUNT VII**
**DIRECT NEGLIGENCE**
*As to All Defendants*

96.     Plaintiff incorporates the preceding paragraphs by reference as if fully restated here.

97.     Defendants Ross and Ross Construction had a special relationship with its employees, which created a duty that Defendants Ross and Ross Construction were required to provide a safe environment and to act in a prudent and safe manner.

98.     Defendants Ross and Ross Construction failed to protect Plaintiff, despite having a duty to do so. Defendants Ross and Ross Construction further failed to provide Plaintiff with necessary work accommodations by failing to separate Plaintiff from his discriminatory coworkers and supervisors, as noted above.

99.     Defendants Ross and Ross Construction breached the duties it owed to the general public, its employees, and Plaintiff in particular, by:

    a.      Negligently hiring Defendant John Does 1 through 10;

    b.      Negligently retaining Defendant John Does 1 through 10, despite that it knew or reasonably should have known of their propensity to harass and discriminate against Hispanic and Mexican employees;

    c.      Failing to supervise, train, and/or monitor Defendant John Does 1 through 10 to prevent them from acting in accordance with their known propensities, despite having a duty to do so;

    d.      Failing to have an adequate system in place for harassed employees to receive adequate emotional and mental assistance; and

    e.      Others to be discovered through the course of litigation.

100.    As a direct and proximate result of Defendants' negligence and/or gross negligence, Plaintiff suffered severe damages and will continue to suffer damages in the future.

**COUNT VIII**
**VICARIOUS LIABILITY**
*As to Defendants Ross and Ross Construction*

101.    Plaintiff incorporates the preceding paragraphs by reference as if fully restated here.

102.    At all relevant times, Plaintiff and Defendant John Does 1 through 10 were employees of Defendants Ross and Ross Construction.

103.    As such, at all relevant times to the acts and/or omissions complained of here, Defendants Ross and Ross Construction's agents, representatives, and employees were acting within the course and scope of their employment.

104.    Moreover, Defendants Ross and two Defendant John Does (presently known to Plaintiff only by "Benjamin" and "Dave) were acting as Plaintiff's supervisors at all times pertinent to this action.

105.    Defendants Ross and Ross Construction had certain nondelegable duties to provide Plaintiff with a safe place to work.

106.    Defendants Ross and Ross Construction are vicariously liable for the acts and/or omissions of their agents/employees that caused injury to Plaintiff by virtue of the doctrine of *respondeat superior*.

107.    Defendants Ross and Ross Construction are also vicariously liable because they knew or should have known that Defendant John Does 1 through 10 engaged in prior, similar acts of discrimination, and knew or should have known of the high likelihood that they would act in accordance with this propensity.

108.    By virtue of Defendant Ross and Ross Construction's special relationship with their agents/servants/employees, each failed to use due care to protect Plaintiff from the foreseeable harms caused by its agents/servants/employees.

109. As a direct and proximate result of Defendants' acts and/or omissions, negligence and/or gross negligence, Plaintiff suffered severe damages and will continue to suffer damages in the future.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in his favor and against Defendants, jointly and severally, in an amount that is fair and reasonable and compensates Plaintiff for his injuries, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred.

Respecefully submitted,

HOLLAND LOCKLEAR (P82236)
**Law Offices of Holland Locklear, PLLC**
Counsel for Plaintiff
607 Shelby Street, Suite 725
Detroit, Michigan 48226
(833) 424-4466/ Fax: (833) 424-4466
holland@locklearlegal.com

Dated: 3/29/22

## DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, José Antonio Espinosa Cruz, by and through his attorney, Law

Offices of Holland Locklear, and hereby demands a trial by jury in the above-captioned matter.

Respectfully submitted,

HOLLAND LOCKLEAR (P82236)
**Law Offices of Holland Locklear, PLLC**
Counsel for Plaintiff
607 Shelby Street, Suite 725
Detroit, Michigan 48226
(833) 424-4466/ Fax: (833) 424-4466
holland@locklearlegal.com

Dated: 3/29/22

18